UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGOLAND AVIATION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 12-cv-1139 |
| | ) | |
| RICHARD R. TODD, CHICAGO | ) | |
| PREMIER BOAT RENTAL AND | ) | JURY DEMANDED |
| LEASING, LLC, d/b/a CHICAGO | ) | |
| PREMIER FLIGHT TRAINING, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, CHICAGOLAND AVIATION, LLC, by its attorneys, David L. Newman, Jenifer H. Caracciolo, and Robert A. McKenzie (Arnstein & Lehr LLP, *of counsel*), for its Complaint against Defendants, RICHARD R. TODD and CHICAGO PREMIER BOAT RENTAL AND LEASING, LLC, d/b/a CHICAGO PREMIER FLIGHT TRAINING, states as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff, Chicagoland Aviation, LLC ("Chicagoland Aviation") is an Illinois limited liability company in good standing with its principal place of business located at 1 George Michael Drive, in Romeoville, Illinois.  Chicagoland Aviation is in the business of providing flight training, aircraft rental, aircraft sales and aircraft management, and conducts its operations at Lewis University Airport.

2.     Defendant, Richard R. Todd, ("Todd") is an Illinois resident, residing at 58 Deborah Drive, Lemont, Illinois.  He is a former employee of Chicagoland Aviation.  Upon

- 1 -

information and belief, Todd is currently the Managing Member of Defendant, Chicago Premier

Boat Rental & Leasing, LLC d/b/a Chicago Premier Flight Training.

3.    Defendant, Chicago Premier Boat Rental & Leasing, LLC d/b/a Chicago Premier

Flight Training ("CPFT") is a limited liability company organized and existing under the laws of

and in good standing with the State of Illinois, with its principal place of business located at 58

Deborah Drive, Lemont, Illinois.  Like Chicagoland Aviation, CPFT is engaged in the business

of providing flight training, aircraft rental and aircraft management, and conducts its operations

at Lewis University Airport.

4.    This is an action for trademark infringement, unfair competition, deceptive trade

practices, breach of fiduciary duty, breach of confidentiality agreement, tortious interference with

contract, and tortious interference with business expectancy.  The Court has subject matter

jurisdiction pursuant to 15 U.S.C. §1121; 28 U.S.C. §1331, and 28 U.S.C. §1338.  The Court has

supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §3567.

5.    Venue is proper pursuant to 28 U.S.C. §1391 because all defendants are Illinois

residents and the wrongful acts alleged occurred in the State of Illinois.

## FACTUAL ALLEGATIONS

6.    Since 2010, Chicagoland Aviation has been and continues to be a premier General

Aviation service provider headquartered at the Lewis University Airport that offers a unique

aviation training program to its clients.  It is a small business with seven (7) flight instructors,

and prides itself as being Chicago's top agency that trains pilots.  Chicagoland Aviation created

"CHICAGO'S PREMIER FLIGHT TRAINING PROVIDER" for its slogan and trade name for

its website, www.chicagolandaviation.com and when promoting the company in general.

Plaintiff has used this slogan since the Company was founded in 2010.

- 2 -

7.     From its foundation, Chicagoland Aviation has been able to gain the trust and confidence of its clientele based on its expertise in the industry, its knowledge of the services needed by the customer, its attention to detail in connection with providing flight training, and its use of skilled flight instructors and quality aircraft.

8.     Chicagoland Aviation has expended significant amounts of time, energy and money in marketing, selling and promoting its services, in developing confidential information in furtherance of its commercial efforts, and in establishing the "CHICAGO'S PREMIER FLIGHT TRAINING PROVIDER" name in connection with the business, commercial reputation, and goodwill of Chicagoland Aviation.

9.     As part of its commercial efforts, Chicagoland Aviation created and developed confidential information and has continuously used its slogan and trade name, in various settings, in connection with its role as a General Aviation provider.   Plaintiff uses its confidential information and the trade name "CHICAGO'S PREMIER FLIGHT TRAINING PROVIDER" in promoting its services and in furthering its good will and business reputation, including but not limited to, confidential client information, customer requirements, client contacts, customer lists, customer marketing agreements, pricing strategies, customer needs and propensities and confidential financial and banking information.

10.    Since 2010, Chicagoland Aviation's trade name has consistently and continuously grown in recognition.

11.    Given the nature of Chicagoland Aviation's business, its customer requirements, client contacts, customer lists, customer marketing agreements, pricing strategies, customer needs and propensities and confidential financial and banking information is confidential information that is only known to Chicagoland Aviation and, within Chicagoland Aviation, are

- 3 -

disseminated only to those selected persons who have a need to know such information to allow such persons to conduct their daily business for Chicagoland Aviation.

12.     Because of the nature of Chicagoland Aviation's business, the foregoing confidential information held by it is kept sufficiently secret for Chicagoland Aviation to derive economic value from not being generally known to other persons or entities who can obtain economic value from the disclosure or use of such information.  Chicagoland Aviation has taken steps to protect its confidential information, including keeping the information password protected and telling only those employees on a need to know basis.

13.     Prior to Todd's employment by, and involvement with, Chicagoland Aviation, he had no experience in the aviation industry in the capacity he ultimately held as an employee of Chicagoland Aviation.  He therefore knew none of Chicagoland Aviation's clients or its methods of aviation training, nor did he have any relationships with the owners of the airplanes that Chicagoland Aviation maintains marketing agreements with for use in its flight instruction.

14.     Todd began working at Chicagoland Aviation on May 23, 2010 as a flight instructor.  On June 1, 2011, Plaintiff promoted Todd to Director of the Flying Club, because Todd represented to Chicagoland Aviation that he wanted to become more involved in the day to day operations of the company.

15.     Chicagoland Aviation's confidential information was communicated in confidence by Chicagoland Aviation to Todd while he was employed as the Director of the Flying Club, and solely as a result of his employment and status at the company.

16.     During the course of Todd's employment, Chicagoland Aviation paid for Todd to become a FAASTeam representative, a program offered through the Federal Aviation Administration that promotes aviation safety.

- 4 -

17.     In consideration for being promoted to Director of The Flying Club and having access to all of Plaintiff's financial and customer information, Todd executed a Confidentiality Agreement (the "Agreement") with Chicagoland Aviation.  A true and correct copy of the Agreement is attached as Exhibit 1.

18.     Pursuant to the Agreement, Todd agreed that he had a duty to protect Chicagoland Aviation's confidential information, and that he would only use Plaintiff's confidential information "for the purpose of evaluating potential business, entering financial information into computer systems and investments relationships with [Chicagoland Aviation]."  Exhibit 1, paragraphs 1 and 2.

19.     Pursuant to paragraph 3 of the Agreement, Todd also agreed not to disclose Confidential Information to any third party without the express authority of Chicagoland Aviation.  Exhibit 1, paragraph 3.

20.     The Agreement also provided that

> [i]f there is a breach . . . of any provision of this Agreement, it is agreed and understood that [Chicagoland Aviation] shall have no adequate remedy in money or other damages and . . . shall be entitled to injunctive relief; provided however, no specification in this Agreement of any particular remedy shall be construed as a waiver or prohibition of any other remedies in the event of a breach or threatened breach of this Agreement."

Exhibit 1, paragraph 9.

21.     As the Director of The Flying Club at Chicagoland Aviation, Todd became aware of the relationships between Chicagoland Aviation and its clientele and business relationships, including but not limited to, the specific client contacts, client specifications, and the owners of the airplanes that Plaintiff had marketing agreements with.

- 5 -

9951073.3

22.     Since Chicagoland Aviation's clientele is not publicly available, the only way that Todd knew of Chicagoland Aviation's clients and airplane marketing agreements  was through his employment and affiliation with Plaintiff.

23.     On December 18, 2011, Todd gave his two-week notice of resignation to Chicagoland Aviation.

24.     Shortly after Todd tendered his resignation, on the evening of December 20, 2011, he entered Plaintiff's office after hours and disconnected Plaintiff's entire computer system in order to take home a printer and battery backup that Todd owned.  By disconnecting the computer system, Todd effectively shut down Chicagoland Aviation's network and telephones, which resulted in Plaintiff losing an entire day of business on December 21, 2011, the following business day.

25.     On December 21, 2011, in email correspondence to Matt Zahora, Chicagoland Aviation's President, Todd pledged "not to solicit" his flight instructing services to Chicagoland Aviation's customers, a copy of which is attached as Exhibit 2.

26.     In that same email, Todd indicated that his resignation was effective immediately. On information and belief, Todd was taking active steps to form a competing flight training school prior to the time he tendered his resignation to Chicagoland Aviation up through the effective date of his resignation.

27.     On information and belief, Todd ended his employment with Chicagoland Aviation on December 21, 2011, and immediately began running CPFT, a competing flight training school conducting its operations at the same airport as Chicagoland Aviation.

9951073.3

28.     The name of Todd's competing company, "Chicago Premier Flight Training" is identical to Chicagoland Aviation's slogan and trade name "CHICAGO'S PREMIER FLIGHT TRAINING PROVIDER."

## COUNT I
## VIOLATION OF THE LANHAM ACT
## FEDERAL UNFAIR COMPETITION

1-28.   Plaintiff repeats and re-alleges paragraphs 1-28 as paragraphs 1-28, inclusive, of this Count I.

29.     This Count is based on service mark and trade name infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) by virtue of defendants' violations of Chicagoland Aviation's rights in its service mark and trade name "CHICAGO'S PREMIER FLIGHT TRAINING PROVIDER."

30.     Defendants, without Chicagoland Aviation's consent, have adopted and used the infringing trade name and service mark "Chicago's Premier Flight Training," and other words, items, names, symbols, or devices in connection with their services that constitute a false designation of origin and false description or false representation that is likely to cause confusion, mistake, palming off with respect to Plaintiff's trade name and service mark "Chicago's Premier Flight Training," or deception to the public as to the affiliation, connection, or association of defendants with Chicagoland Aviation, or as to the origin, sponsorship, or approval of defendants' services by Chicagoland Aviation, in violation of §43(a) of the Lanham Act.

31.     Defendants' actions have been to the detriment and injury of Chicagoland Aviation.

9951073.3

32.     Defendants' actions infringe Chicagoland Aviation's trade name and service mark and/or constitute unfair competition under §43(a) of the Lanham Act.

33.     Defendants are aware of the goodwill, reputation and value represented and symbolized by Chicagoland Aviation's trade name and service mark at issue and that the said trade name and service mark are relied on by the public to identify Chicagoland Aviation's services and to distinguish its flight instruction services from the services of others.

34.     Defendants, with the knowledge of the goodwill, reputation and value represented and symbolized by Chicagoland Aviation's trade name and service mark at issue, have used and continue to use a trade name and service mark that is likely to confuse, or to cause mistake, or to deceive the public as to affiliation, connection or association, or as to origin, sponsorship, or approval.

35.     Defendants' actions were and are being committed willfully, with the purpose and intent of misappropriating and trading upon the goodwill and reputation associated with Chicagoland Aviation's trade name and service mark.  Chicagoland Aviation's rights in and to the trade name and service mark at issue have been compromised and defendants have used their confusingly similar trade name and service mark to unfairly compete with Chicagoland Aviation.

36.     As a direct and proximate result of defendants' conduct, Chicagoland Aviation has suffered damages and will continue to suffer actual and other damages in an amount to be proven at trial.

37.     As a result of defendants' infringement and unfair competition, Chicagoland Aviation has suffered and, unless and until defendants are enjoined by this Court, will continue to suffer irreparable harm to Chicagoland Aviation's property rights, goodwill and business reputation for which Chicagoland Aviation has no adequate remedy at law.  Chicagoland Aviation

- 8 -

is entitled to preliminary and permanent injunctive relief to prevent defendants from using their trade name and service mark at issue or any others confusingly similar to Chicagoland Aviation's trade name and service mark at issue.

38.    Chicagoland Aviation is also entitled to an award of treble damages for defendants' willful acts and to an award of reasonable attorneys fees for an exceptional case, both under 15 U.S.C. §1117(a).

WHEREFORE, plaintiff Chicagoland Aviation demands injunctive relief and a judgment in its favor in the amount of its damages against defendants Richard R. Todd and Chicago Premier Boat Rental and Leasing, LLC d/b/a Chicago Premier Flight Training, enhanced damages, attorneys fees and costs pursuant to 15 U.S.C. § 1117(a), prejudgment interest and all such other relief as this Court deems just and proper.

**COUNT II**
**COMMON LAW SERVICE MARK**
**INFRINGEMENT AND UNFAIR COMPETITION**

1-28.    Plaintiff repeats and re-alleges paragraphs 1-28 as paragraphs 1-28, inclusive, of this Count II.

29.    Chicagoland Aviation owns and has used its trade name and service mark in connection with its flight instruction services since at least as early as May 2010.  Because of Chicagoland Aviation's use of its trade name and service mark, they have become associated with Chicagoland Aviation and identify Chicagoland Aviation's services.  Defendants' actions constitute trade name and service mark infringement under the common law of Illinois, where defendants have used their confusingly similar trade name and service mark.

30.    Defendants' unauthorized and infringing use in commerce of Chicagoland Aviation's trade name and service mark constitute unfair competition with Chicagoland

- 9 -

Aviation under Illinois common law, such that such use enables defendants to obtain the benefit of, and trade upon, the recognition and goodwill of Chicagoland Aviation. Chicagoland Aviation has no control over defendants' business and its impact on Chicagoland Aviation's goodwill, so defendants' use of Chicagoland Aviation's confusingly similar trade name and service mark is likely to cause confusion, mistake or deception, and result in defendants' unjust enrichment.

31. Defendants unfairly competed with Chicagoland Aviation in the following manners:

(a) By Todd naming his competing company "Chicago Premier Flight Training" to cause confusion, mistake, or deception to the public;

(b) By misappropriating Chicagoland Aviation's confidential information, including but not limited to Plaintiff's customer lists and contacts, its pricing information and marketing agreements Chicagoland Aviation had with various airplane owners;

(c) By taking active steps to form and open CPFT, which is now a direct competitor of Chicagoland Aviation, and soliciting existing and prospective customers to move their business from Chicagoland Aviation to CPFT;

(d) By telling Chicagoland Aviation customers and employees that Plaintiff was going bankrupt and had no money, and attempting to entice these customers and employees to leave Chicagoland Aviation after Todd started CPFT and work for or do business with CPFT;

(e) By telling Chicagoland Aviation customers and employees that he had reached an agreement with the Lewis University Airport manager to "take over" Plaintiff's office space at Lewis University Airport and have all of Chicagoland Aviation's employees work for CPFT;

(f) By using Chicagoland Aviation's confidential information for his own selfish purposes and for the express purpose of soliciting prospective clients away from Chicagoland Aviation and to CPFT, thereby preventing Chicagoland Aviation from realizing benefits from such new or prospective business and instead taking such business to CPFT;

(g) By using Chicagoland Aviation's confidential information which Todd learned from his employment and status as Director of The Flying Club at

- 10 -

Chicagoland Aviation, and which he would not have known but for his employment and status as Director of The Flying Club of Chicagoland Aviation, in his new company CPFT;

(h)     By convincing one airplane owner to terminate his existing marketing agreement with Chicagoland Aviation and enter into an agreement with CPFT;

(i)     By attempting to convince additional airplane owners that have current marketing agreements with Chicagoland Aviation to prematurely terminate their agreements with Plaintiff and enter into agreements with CPFT; and

(j)     By using Chicagoland Aviation to fund his efforts to become a FAASTeam representative and immediately resigning after receiving FAASTeam representative status to start up CPFT, a competing flight school.

32.     As a direct and proximate cause of defendants' conduct, Chicagoland Aviation has suffered damages and will continue to suffer actual and other damages in an amount to be proven at trial.

33.     As a result of defendants' unfair competition, Chicagoland Aviation has suffered and, unless and until defendants are enjoined by this Court, will continue to suffer irreparable harm to Chicagoland Aviation's property rights, goodwill and business reputation for which Chicagoland Aviation has no adequate remedy at law.  Chicagoland Aviation is entitled to preliminary and permanent injunctive relief to prevent defendants from using their trade name and service mark at issue or any others confusingly similar to Chicagoland Aviation's trade name and service mark at issue.

WHEREFORE, Plaintiff, CHICAGOLAND AVIATION, LLC, respectfully prays that this Court find that Defendants unfairly competed with Plaintiff and granting the following relief:

A.     That the Court issue a Temporary Restraining Order, without bond, as well as a Preliminary Injunction, restraining and enjoining Defendants and all persons in active concert or participation with them, either directly or indirectly, from:

- 11 -

(1)    Using or disclosing at any time, or for any purpose (including the acceptance of any new clients or business), any of Chicagoland Aviation's confidential documents and information as described herein;

(2)    Contacting any of the clients or prospective clients of Chicagoland Aviation, or otherwise competing with Chicagoland Aviation or soliciting clients or prospective clients of Chicagoland Aviation, unless and until Todd can establish that he can do so without misappropriating and/or disclosing Chicagoland Aviation's confidential information and without otherwise competing unfairly; and

(3)    Interfering with the existing contractual relations and prospective economic advantage of Chicagoland Aviation; and

(4)    Otherwise harming Chicagoland Aviation's business.

B.    That Defendants be ordered to:

(1)    Immediately return to Chicagoland Aviation all confidential information belonging to Chicagoland Aviation or relating to Chicagoland Aviation's business, including but not limited to pricing formulas or structures, client lists, contact information or other information identifying Chicagoland Aviation's current or prospective clients, and any and all specifications for use in servicing these clients, that Todd removed, copied, took, used, disseminated, obtained or reviewed, or that Defendants otherwise have in their possession, custody or control;

(2)    Identify all customers of Chicagoland Aviation or past customers of Chicagoland Aviation whom Defendants may have contacted;

(3)    Refrain from accepting Chicagoland Aviation customers who were improperly solicited by Defendants; and

(4)    Provide a full and complete accounting of all revenues and profits earned by Defendants from the sale of any services, provided or otherwise, to any clients since Todd left the employ of Chicagoland Aviation.

(5)    Remove from its Website, advertising, letterhead or other business communications any reference to its business the name "Chicago Premier Flight Training," "Chicago's Premier Flight Training," or any such similar phrase and destroy any such letterhead, advertising or marketing material.

C.    That the Court impose a constructive trust on any and all revenues and profits earned or realized by Defendants which are related in any way to Defendants' use of Chicagoland Aviation's confidential information.

- 12 -

D.    An award to Chicagoland Aviation of its general and special damages resulting from all of Defendants' actions as alleged above, in an amount to be determined at trial;

E.    That the Court order such other relief as may be just and required under the circumstances of this case.

**COUNT III**
**VIOLATION OF THE UNIFORM DECEPTIVE TRADE**
**PRACTICES ACT – 815 ILCS 510/1 et seq. ("UDTPA")**

1-28.    Chicagoland Aviation repeats and realleges paragraphs 1-28, as paragraphs 1-28, inclusive, of this Count III.

29.    Chicagoland Aviation is a "person," as that term is defined by Section 1 of the UDTPA.  815 ILCS 510/1(5).

30.    Todd is a "person" as that term is defined by Section 1 of the UDTPA.  815 ILCS 510/1(5).

31.    CPFT is a "person" as that term is defined by Section 1 of the UDTPA.  815 ILCS 510/1(5).

32.    Chicagoland Aviation's slogan "CHICAGO'S PREMIER FLIGHT TRAINING PROVIDER" is a "trade name" as that term is defined by Section 1 of the UDTPA.  815 ILCS 510/1(8).

33.    Todd's use of Chicagoland Aviation's trade name "Chicago Premier Flight Training" as the name for his competing company neither was nor is authorized in any way by Chicagoland Aviation.

34.    Defendants' use of Chicagoland Aviation's trade name as the name for Todd's competing company began well after Chicagoland Aviation promoted "CHICAGO'S PREMIER FLIGHT TRAINING PROVIDER" as its trade name for Chicagoland Aviation and well after Chicagoland Aviation's first use.

- 13 -

35.     The use by CPFT of Chicagoland Aviation's trade name in connection with CPFT's services has caused confusion, mistake, or deception of the public concerning the source of origin of CPFT's services.

36.     The public, including prospective customers, are likely to consult or purchase CPFT's services bearing Chicagoland Aviation's trade name believing that they are the services of Chicagoland Aviation or authorized by Chicagoland Aviation.

37.     CPFT's use and infringement of Chicagoland Aviation's trade name has been and is willful and deliberate, designed to capitalize and trade on the goodwill associated with Chicagoland Aviation's trade name.

38.     Defendant CPFT's acts of infringement constitutes deceptive trade practices pursuant to Section 2(a) under the UDTPA.  815 ILCS 510/2(a)(2), (3), (12).

39.     Chicagoland Aviation has been harmed, and will continue to be harmed in the future, by Defendants' continued deceptive practices, absent injunctive relief.

40.     Section 3 of the UDTPA provides:  "a person likely to be damaged by a deceptive trade practice or another may be granted injunctive relief[.]"  815 ILCS 510/3.

41.     Section 3 of the UDTPA also provides:  "Costs or attorneys' fees or both may be assessed against a defendant . . . if the court finds that he has willfully engaged in a deceptive trade practice."  815 ILCS 510/3.

42.     Defendants continued unauthorized use of Chicagoland Aviation's trade name as the name of its competing company has forced this legal action, caused undue expenditures of judicial, client and attorney resources, and demonstrates that Defendants are willfully engaging in this deceptive practice.

9951073.3

43.     Pursuant to Section 3 of the UDTPA, Chicagoland Aviation is entitled to recover its attorneys' fees and costs incurred in attempting to enjoin Defendants from engaging in these deceptive practices.

WHEREFORE, Plaintiff, CHICAGOLAND AVIATION, LLC, respectfully prays that this Court award it the following relief:

A.  That the Court issue a Temporary Restraining Order, without bond, as well as a Preliminary Injunction, restraining and enjoining Defendants and all persons in active concert or participation with them, either directly or indirectly, from:

    (1) Using Chicagoland Aviation's trade name, like derivation or confusingly similar trade name;

    (2) Infringing upon Chicagoland Aviation's trade name;

    (3) Providing, offering to provide, and/or advertising general aviation services using Chicagoland Aviation's trade name, like derivation or confusingly similar trade name;

B.  An award to Chicagoland Aviation of its general and special damages resulting from all of Defendants' actions as alleged above, in an amount to be determined at trial;

C.  Awarding Chicagoland Aviation its attorneys' fees and costs;

D.  An award to Chicagoland Aviation of punitive and exemplary damages; and

E.  That the Court order such other relief as may be just and required under the circumstances of this case.

## COUNT IV
## BREACH OF FIDUCIARY DUTY

1-28.   Chicagoland Aviation repeats and realleges paragraphs 1-28, as paragraphs 1-28, inclusive, of this Count IV.

29.     As an employee of Chicagoland Aviation, Todd owed Plaintiff fiduciary duties of good faith and loyalty, such that, while employed by Chicagoland Aviation, he was prohibited from soliciting Plaintiff's customers for himself or otherwise to Chicagoland Aviation's

- 15 -

detriment. Todd was also prohibited from utilizing Plaintiff's pricing information and other confidential information for himself or for a business competitor. He was also prohibited from defaming or otherwise disparaging Chicagoland Aviation, its services or employees, or otherwise acting in a manner that was adverse to the company's best interests.

30. Despite these duties arising from his employment relationship with Chicagoland Aviation, and in violation of those duties, Todd breached such duties and otherwise breached his fiduciary duties prior to resigning from Chicagoland Aviation, by, among other things:

(a) Misappropriating Chicagoland Aviation's confidential information, including but not limited to Plaintiff's customer lists and contacts, its pricing information and marketing agreements Chicagoland Aviation had with various airplane owners;

(b) Taking active steps to form and open CPFT, which is now a direct competitor of Chicagoland Aviation, and soliciting existing and prospective customers to move their business from Chicagoland Aviation to CPFT;

(c) Representing to Chicagoland Aviation customers and employees that Plaintiff was going bankrupt and had no money, and attempting to entice these customers and employees to leave Chicagoland Aviation after Todd started CPFT and work for or do business with CPFT;

(d) Representing to Chicagoland Aviation customers and employees that he had reached an agreement with the Lewis University Airport manager to "take over" Plaintiff's office space at Lewis University Airport and have all of Chicagoland Aviation's employees work for CPFT;

(e) Using Chicagoland Aviation's confidential information for his own selfish purposes and for the express purpose of soliciting prospective clients away from Chicagoland Aviation and to CPFT, thereby preventing Chicagoland Aviation from realizing benefits from such new or prospective business and instead taking such business to CPFT;

(f) Using Chicagoland Aviation's confidential information which Todd learned from his employment and status as Director of The Flying Club at Chicagoland Aviation, and which he would not have known but for his employment and status as Director of The Flying Club of Chicagoland Aviation, in his new company CPFT;

- 16 -

(g)     Convincing one airplane owner doing business with Chicagoland Aviation to terminate his existing marketing agreement with Chicagoland Aviation and enter into an agreement with CPFT;

(h)     Attempting to convince additional airplane owners that have current marketing agreements with Chicagoland Aviation to prematurely terminate their agreements with Plaintiff and enter into agreements with CPFT;

(i)     Using Chicagoland Aviation to fund his efforts to become a FAASTeam representative and immediately resigning after receiving FAASTeam representative status to start up CPFT, a competing flight school; and

(j)     Other improper acts that have yet to be discovered by Chicagoland Aviation.

31.     At all times, Todd and CPFT were aware of the near permanent relationships between Chicagoland Aviation and its customers and airplane owners, as evidenced by Todd's efforts to target Chicagoland Aviation's customers, business and contractual relationships and attempt to induce them to move their business to CPFT by using Chicagoland Aviation's slogan "Chicago's Premier Flight Training" as the name of his business.

32.     To protect its legitimate business interests, including the confidential information described herein, Chicagoland Aviation took deliberate steps to ensure that these aspects of its business processes and efforts would not be disclosed to any outside individual or entity by limiting access to such confidential information only to those persons in Chicagoland Aviation's business who had a need to know such information.

33.     Chicagoland Aviation has a legally protectable interest in its confidential information, goodwill, and in its near permanent customer relationships.

34.     As a result of Todd's breaches of fiduciary duties, Chicagoland Aviation has been harmed by, among other things, a sudden loss of some of its flight instructors and other staff, the premature termination of one of its airplane marketing agreements, loss of customers, loss of confidential information, loss of goodwill, and loss of profits.   These damages are of a

- 17 -

continuing nature and represent an irreparable harm to Chicagoland Aviation and its capacity and ability to do business and to protect its confidential information.

35. Chicagoland Aviation has no adequate remedy at law which would fully compensate for the sudden loss of certain of its flight instructors and other staff, and/or the loss and misuse of its confidential information, and Chicagoland Aviation stands a reasonable likelihood of success on the merits in obtaining the relief requested herein.

WHEREFORE, Plaintiff, CHICAGOLAND AVIATION, LLC, respectfully prays that this Court find that Defendant Richard R. Todd breached his fiduciary duty to Plaintiff and award Plaintiff the following relief:

A. That the Court issue a Temporary Restraining Order, without bond, as well as a Preliminary Injunction, restraining and enjoining Defendants and all persons in active concert or participation with them, either directly or indirectly, from:

(1) Using or disclosing at any time, or for any purpose (including the acceptance of any new clients or business), any of Chicagoland Aviation's confidential documents and information as described herein;

(2) Contacting any of the clients or prospective clients of Chicagoland Aviation, or otherwise competing with Chicagoland Aviation or soliciting clients or prospective clients of Chicagoland Aviation, unless and until Todd can establish that he can do so without misappropriating and/or disclosing Chicagoland Aviation's confidential information and without otherwise competing unfairly; and

(3) Interfering with the existing contractual relations and prospective economic advantage of Chicagoland Aviation; and

(4) Otherwise harming Chicagoland Aviation's business.

B. That Defendant Todd be ordered to:

(1) Immediately return to Chicagoland Aviation all confidential information belonging to Chicagoland Aviation or relating to Chicagoland Aviation's business, including but not limited to pricing formulas or structures, client lists, contact information or other information identifying Chicagoland Aviation's current or prospective clients, and any and all specifications for use in servicing these clients, that Todd removed, copied, took, used,

- 18 -

disseminated, obtained or reviewed, or that Defendants otherwise have in their possession, custody or control;

(2)    Identify all customers of Chicagoland Aviation or past customers of Chicagoland Aviation whom Defendants may have contacted;

(3)    Refrain from accepting Chicagoland Aviation customers who were improperly solicited by Defendants; and

(4)    Provide a full and complete accounting of all revenues and profits earned by Defendants from the sale of any services, provided or otherwise, to any clients since Todd left the employ of Chicagoland Aviation.

(5)    Remove from its Website, advertising, letterhead or other business communications any reference to its business the name "Chicago Premier Flight Training," "Chicago's Premier Flight Training," or any such similar phrase and destroy any such letterhead, advertising or marketing material.

C.    That the Court impose a constructive trust on any and all revenues and profits earned or realized by Defendants which are related in any way to Defendants' use of Chicagoland Aviation's confidential information.

D.    An award to Chicagoland Aviation of its general and special damages resulting from all of Defendants' actions as alleged above, in an amount to be determined at trial;

E.    That the Court order such other relief as may be just and required under the circumstances of this case.

## COUNT V
## BREACH OF CONFIDENTIALITY AGREEMENT
### (Against Todd)

1-28.    Chicagoland Aviation repeats and realleges paragraphs 1-28, as paragraphs 1-28, inclusive, of this Count V.

29.    Todd currently owns and operates CPFT.

30.    Since his execution of the Confidentiality Agreement (Exhibit 1) and his resignation from Chicagoland Aviation, Todd has knowingly, intentionally, and unjustifiably disclosed Chicagoland Aviation's customers, marketing, current business plans and costs and/or financial information to and for the benefit of CPFT.

- 19 -

31.     Such conduct and disclosure of information to a third party was not "for the purpose of evaluating potential business, entering financial information into computer systems and investment relationships with [Chicagoland Aviation]", but rather, to harm Chicagoland Aviation and, is in plain breach of the Confidentiality Agreement.

32.     On December 22, 2011, Chicagoland Aviation, through its counsel, delivered a letter to Todd requesting that he cease and desist his wrongful activities.  A true and correct copy of the 12/22/11 letter is attached as Exhibit 3.

33.     Todd responded to the letter, swearing that he would never intentionally use any confidential or proprietary information from Chicagoland Aviation.

34.     Despite the foregoing, immediately after terminating his employment with Chicagoland Aviation, Todd began working for CPFT in direct competition with Plaintiff, performing the same and/or similar services to those which he provided on behalf of Chicagoland Aviation.  As a result, six (6) customers, one (1) airplane owner, and three (3) employees have ceased working for or doing business with Chicagoland Aviation so far.

35.     Pursuant to the Confidentiality Agreement, Todd acknowledged and agreed that customers and clients were Chicagoland Aviation's confidential information, and that he had no right to use that information.

36.     Todd also agreed that in the event there was a breach of the Confidentiality Agreement, Chicagoland Aviation would be without an adequate remedy in money or other damages and therefore entitled to injunctive relief.

37.     Chicagoland Aviation has a legally protectable interest in its confidential information, goodwill, near permanent customer relationships, and in the enforcement of the Confidentiality Agreement.

38. Chicagoland Aviation has suffered irreparable harm and damage by virtue of Todd's breach of the Confidentiality Agreement, and will continue to suffer irreparable harm as long as Todd continues to use Plaintiff's confidential information for the benefit of CPFT in order to engage in competitive activities.

39. Chicagoland Aviation has no adequate remedy at law which would fully compensate it for the sudden loss of certain of its flight instructors and other staff, loss of airplanes from its fleet, the loss of its customers, good will, and confidential information, and the violations of its Confidentiality Agreement, and Chicagoland Aviation stands a reasonable likelihood of success on the merits in obtaining the relief requested herein.

WHEREFORE, Plaintiff, CHICAGOLAND AVIATION, LLC, respectfully prays that this Court find that Defendant Todd breached the Confidentiality Agreement entered into with Plaintiff and award Plaintiff the following relief:

A. That the Court issue a Temporary Restraining Order, without bond, as well as a Preliminary Injunction, restraining and enjoining Defendants and all persons in active concert or participation with them, either directly or indirectly, from:

(1) Using or disclosing at any time, or for any purpose (including the acceptance of any new clients or business), any of Chicagoland Aviation's confidential documents and information as described herein;

(2) Contacting any of the clients or prospective clients of Chicagoland Aviation, or otherwise competing with Chicagoland Aviation or soliciting clients or prospective clients of Chicagoland Aviation, unless and until Todd can establish that he can do so without misappropriating and/or disclosing Chicagoland Aviation's confidential information and without otherwise competing unfairly; and

(3) Interfering with the existing contractual relations and prospective economic advantage of Chicagoland Aviation; and

(4) Otherwise harming Chicagoland Aviation's business.

B. That Defendant Todd be ordered to:

9951073.3

(1)     Immediately return to Chicagoland Aviation all confidential information belonging to Chicagoland Aviation or relating to Chicagoland Aviation's business, including but not limited to pricing formulas or structures, client lists, contact information or other information identifying Chicagoland Aviation's current or prospective clients, and any and all specifications for use in servicing these clients, that Todd removed, copied, took, used, disseminated, obtained or reviewed, or that Defendants otherwise have in their possession, custody or control;

(2)     Identify all customers of Chicagoland Aviation or past customers of Chicagoland Aviation whom Defendants may have contacted;

(3)     Refrain from accepting Chicagoland Aviation customers who were improperly solicited by Defendants; and

(4)     Provide a full and complete accounting of all revenues and profits earned by Defendants from the sale of any services, provided or otherwise, to any clients since Todd left the employ of Chicagoland Aviation.

(5)     Remove from its Website, advertising, letterhead or other business communications any reference to its business the name "Chicago Premier Flight Training," "Chicago's Premier Flight Training," or any such similar phrase and destroy any such letterhead, advertising or marketing material.

C.     That the Court impose a constructive trust on any and all revenues and profits earned or realized by Defendants which are related in any way to Defendants' use of Chicagoland Aviation's confidential information.

D.     An award to Chicagoland Aviation of its general and special damages resulting from all of Defendants' actions as alleged above, in an amount to be determined at trial;

E.     That the Court order such other relief as may be just and required under the circumstances of this case.

## COUNT VI
## TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY
### (All Defendants)

1-28.   Chicagoland Aviation repeats and realleges paragraphs 1-28, as paragraphs 1-28, inclusive, of this Count VI.

29.   Until events giving rise to these actions, Chicagoland Aviation had a reasonable expectancy that it would maintain business relationships with its customers, prospective

9951073.3

customers and airplane owners, including the customers and airplane lessors that it serviced and maintained marketing agreements with while Todd was employed at Chicagoland Aviation. There was further a reasonable certainty that these relationships would continue indefinitely into the future, irrespective of Todd's affiliation with Chicagoland Aviation.

30.     Chicagoland Aviation also had the reasonable expectation that these relationships would continue with Chicagoland Aviation after Todd left the employ of Chicagoland Aviation and would not be unjustifiably disrupted.

31.     As a result of Todd's position as Director of The Flying Club and a flight instructor, Todd and CPFT were well aware of the business relationships between Chicagoland Aviation and its customers, including those clients serviced by Todd while he was employed at Chicagoland Aviation.

32.     Notwithstanding their knowledge of the existence of these valid business relationships, Todd and CPFT intentionally and unjustifiably interfered so as to induce or cause a breach or termination of Chicagoland Aviation's expectancy of business relationships with these customers.

33.     Since Todd's departure, six (6) customers and one (1) airplane owner have ceased doing business with Chicagoland Aviation and started doing business with CPFT.

34.     Defendants' intentional and unjustified interference with said expectancy was done through wrongful means including using Chicagoland Aviation's confidential information and Chicagoland Aviation's slogan as the name for Todd's new company.

35.     Defendants knew of Chicagoland Aviation's business expectations and have intentionally and wrongfully interfered with and are continuing to interfere with those client relationships.

- 23 -

36.     As a direct and proximate result of Defendants' tortious interference, Chicagoland Aviation has suffered economic damages.

WHEREFORE, Plaintiff, CHICAGOLAND AVIATION, LLC, respectfully prays that this Court find that Defendants tortiously interfered with Plaintiff's business expectancies and award Plaintiff the following relief:

A.      Ordering that Defendants be held liable for all general and special damages to Chicagoland Aviation arising from their tortious interference;

B.      Further ordering that Defendants:

   (1)     Identify all customers of Chicagoland Aviation or past customers of Chicagoland Aviation who were improperly acquired by Defendant CPFT through Todd; and

   (2)     Provide a complete accounting of all revenues and profits earned as a result of the sale of any products or services to any Chicagoland Aviation past or present customer to whom services were provided by Todd, or any other employee who has since left to work for CPFT.

C.      Imposition of a constructive trust on any and all revenues and profits earned or realized as a result of Defendant's interference with Chicagoland Aviation's client relationships;

D.      Any other relief as may be just and required under the circumstances of this case.

## COUNT VII
## TORTIOUS INTERFERENCE WITH CONTRACT
### (Todd and CPFT)

1-28.   Chicagoland Aviation repeats and realleges paragraphs 1-28, as paragraphs 1-28, inclusive, of this Count VII.

29.     At all relevant times, Defendants were aware of the existing business and customer relationships enjoyed by Chicagoland Aviation.

- 24 -

9951073.3

30.    More specifically, Defendants were aware of the marketing agreements that Chicagoland Aviation has with the owners of the airplanes Chicagoland Aviation uses when providing flight instruction.

31.    Despite this knowledge of Chicagoland Aviation's business, customer relationships and marketing agreements, CPFT and Todd undertook to use Chicagoland Aviation's business information and customer information to divert, and are attempting to divert, Chicagoland Aviation's customers and marketing agreements in order to obtain for themselves the customers, sales, markets, goodwill and profits of Chicagoland Aviation.

32.    Upon information and belief, Todd, on behalf of CPFT, convinced a Chicagoland Aviation client and airplane owner to abruptly terminate his marketing agreement with Plaintiff in mid-November 2011.  The term of the marketing agreement was for 12 months, and was not set to expire until June 3, 2012.

33.    In addition, Todd, on behalf of CPFT, contacted another client doing business with Chicagoland Aviation, in an effort to get him to leave Plaintiff and terminate his marketing agreement with Chicagoland Aviation.

34.    Todd was, at all relevant times, aware of both marketing agreements with Chicagoland Aviation.

35.    Nonetheless, Todd, on behalf of CPFT, intentionally and without justification induced Chicagoland Aviation's client to terminate his marketing agreement with Chicagoland Aviation.

36.    Todd, on behalf of CPFT, similarly attempted to induce additional Chicagoland Aviation clients to terminate their marketing agreements with Chicagoland Aviation, but was unsuccessful.

37. As a direct and proximate result of Defendants' tortious interference, Chicagoland Aviation has suffered economic damages.

38. Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff, CHICAGOLAND AVIATION, LLC, respectfully prays that this Court find that Defendants' tortiously interfered with Plaintiff's existing contracts and award Plaintiff the following relief:

A. Ordering that Defendants be held liable for all general and special damages to Chicagoland Aviation arising from their tortious interference;

B. Further ordering that Defendants:

    (1) Identify all customers of Chicagoland Aviation or past customers of Chicagoland Aviation who were improperly acquired by Defendant CPFT through Todd; and

    (2) Provide a complete accounting of all revenues and profits earned as a result of the sale of any products or services to any Chicagoland Aviation past or present customer to whom services were provided by Todd, or any other employee who has since left to work for CPFT.

C. Imposition of a constructive trust on any and all revenues and profits earned or realized as a result of Defendant's interference with Chicagoland Aviation's client relationships;

D. Any other relief as may be just and required under the circumstances of this case.

Respectfully submitted,

CHICAGOLAND AVIATION, LLC

By:___/s Jenifer H. Caracciolo_____
            One of its attorneys

David L. Newman (ARDC #6210912)
Jenifer H. Caracciolo (ARDC #6280221)
Robert A. McKenzie (ARDC #6293346)
Arnstein & Lehr LLP
120 S. Riverside Plaza, Suite 1200
Chicago, Illinois 60606
(312) 876-7100

- 26 -

9951073.3