# EXHIBIT 1

## Confidentiality Agreement

It is understood and agreed to that the Discloser and the Recipient would like to exchange certain information that may be considered confidential. To ensure the protection of such information and in consideration of the agreement to exchange said information, the parties agree as follows:

1. The confidential information to be disclosed by Discloser under this Agreement ("Confidential Information") can be described as and includes:

Technical and business information relating to Discloser's proprietary ideas, patentable ideas copyrights and/or trade secrets, existing and/or contemplated products and services, software, schematics, research and development, production, costs, profit and margin information, finances and financial projections, customers, clients, marketing, and current or future business plans and models, regardless of whether such information is designated as "Confidential Information" at the time of its disclosure.

In addition to the above, Confidential Information shall also include, and the Recipient shall have a duty to protect, other confidential and/or sensitive information which is (a) disclosed by Discloser in writing and marked as confidential (or with other similar designation) at the time of disclosure; and/or (b) disclosed by Discloser in any other manner and identified as confidential at the time of disclosure and is also summarized and designated as confidential in a written memorandum delivered to Recipient within thirty (30) days of the disclosure.

2. Recipient shall use the Confidential Information only for the purpose of evaluating potential business, entering financial information into computer systems and investment relationships with Discloser.

3. Recipient shall limit disclosure of Confidential Information within its own organization to its directors, officers, partners, members and/or employees having a need to know and shall not disclose Confidential Information to any third party (whether an individual, corporation, or other entity) without the prior written consent of Discloser. Recipient shall have satisfied its obligations under this paragraph if it takes affirmative measures to ensure compliance with these confidentiality obligations by its employees, agents, consultants and others who are permitted access to or use of the Confidential Information.

4. This Agreement imposes no obligation upon Recipient with respect to any Confidential Information (a) that was in Recipient's possession before receipt from Discloser; (b) is or becomes a matter of public knowledge through no fault of Recipient; (c) is rightfully received by Recipient from a third party not owing a duty of confidentiality to the Discloser; (d) is disclosed without a duty of confidentiality to a third party by, or with the authorization of, Discloser; or (e) is independently developed by Recipient.

5. Discloser warrants that he/she has the right to make the disclosures under this Agreement.

6. This Agreement shall not be construed as creating, conveying, transferring, granting or conferring upon the Recipient any rights, license or authority in or to the information exchanged, except the limited right to use Confidential Information specified in paragraph 2. Furthermore and specifically, no license or conveyance of any intellectual property rights is granted or implied by this Agreement.

7. Neither party has an obligation under this Agreement to purchase any service, goods, or intangibles from the other party. Discloser may, at its sole discretion, using its own information, offer such products and/or services for sale and modify them or discontinue sale at any time. Furthermore, both parties acknowledge and agree that the exchange of information under this Agreement shall not commit or bind either party to any present or future contractual relationship (except as specifically stated herein), nor shall the exchange of information be construed as an inducement to act or not to act in any given manner.

8. Neither party shall be liable to the other in any manner whatsoever for any decisions, obligations, costs or expenses incurred, changes in business practices, plans, organization, products, services, or otherwise, based on either party's decision to use or rely on any information exchanged under this Agreement.

9. If there is a breach or threatened breach of any provision of this Agreement, it is agreed and understood that Discloser shall have no adequate remedy in money or other damages and accordingly shall be entitled to injunctive relief; provided however, no specification in this Agreement of any particular remedy shall be construed as a waiver or prohibition of any other remedies in the event of a breach or threatened breach of this Agreement.

10. This Agreement states the entire agreement between the parties concerning the disclosure of Confidential Information and supersedes any prior agreements, understandings, or representations with respect thereto. Any addition or modification to this Agreement must be made in writing and signed by authorized representatives of both parties. This Agreement is made under and shall be construed according to the laws of the State of Illinois, U.S.A. In the event that this agreement is breached, any and all disputes must be settled in a court of competent jurisdiction in the State of Illinois, U.S.A.

11. If any of the provisions of this Agreement are found to be unenforceable, the remainder shall be enforced as fully as possible and the unenforceable provision(s) shall be deemed modified to the limited extent required to permit enforcement of the Agreement as a whole.

**WHEREFORE**, the parties acknowledge that they have read and understand this Agreement and voluntarily accept the duties and obligations set forth herein.

Recipient of Confidential Information:
Name (Print or Type): Richard R Todd
Company: Chicagoland Aviation
Title: Director of Membership
Address: 58 Deborah Dr.
City, State & Zip: Lemont, IL 60439
Signature: _____
Date: September 27, 2011

Discloser of Confidential Information:
Name (Print of Type): Matt Zahora
Company: Chicagoland Aviation
Title: President
Address: 1 George Michas Dr. STE 127
City, State & Zip: Romeoville, IL 60446
Signature: _____
Date:

I, the undersigned Notary Public in and for the County of Cook and State of IL, do hereby certify that the recipient of confidential material, whose name is signed to the foregoing Confidentiality Agreement bearing the date of September 27, 2011 has acknowledged the same before me in my county aforesaid.

Given under my hand this 27th
Notary Public

My Commission Expires: August 17, 2013



JENNIFER BONILLA
MY COMMISSION EXPIRES
AUGUST 17, 2013

# EXHIBIT 2

Begin forwarded message:

**From:** Rick Todd <rtodd@chicagolandaviation.com>
**Date:** December 21, 2011 3:31:27 PM CST
**To:** Matt Zahora <mzahora@chicagolandaviation.com>
**Cc:** Matt Runty <mrunty@chicagolandaviation.com>, Anthony Lalor <alalor@chicagolandaviation.com>, Tim Lutgen <tlutgen@chicagolandaviation.com>, Richard Antoniolli <rantoniolli@chicagolandaviation.com>
**Subject: Flight clients**

Matt,
I appologize for not getting back to you sooner but my wife had a pregnancy issue we were dealing with. I would recommend the following for the clients:

Zach Musso:
Zach will need a CFII to finish up his instrument training and I suggest you work with him. I don't think that Chris would be a very good match due to his personality.
He is in the process of doing cross countries to build up his hours and needs some more hood time but you should be able to get him done in a month.

Scott Klein,
Scott is almost ready for his Solo cross countries. I think he would be a good match with Anthony.
He did mention that he would not be flying until after the holidays.

Jerry Kulhanek,
As you know Jerry and I have gotten to be good friends. Since he has purchased his own airplane I ran every single flight through Chicagoland.
Again I would suggest Anthony or Richard. I will not purposefully solicit his business, but I'm not sure he will want to fly with anyone else.

As a point of note regarding students:
We have never signed a contract regarding my services as a flight instructor forbidding me to fly with ex-customers of yours.
I do pledge not to solicit my flight instructing services to your current customers, however, if they voluntarily leave your company I will not turn them away.
It is after all the customer who has to be happy with the services and instructor.

You may close this e-mail account at any time and contact me at rtpilot@gmail.com for all future correspondence.

~~Since I have done as you requested and shared with you the status of all the students I hereby terminate my employment effective immediately.~~

I wish you the best of luck in your future endeavours.

-Rick Todd

1/19/2012

# EXHIBIT 3

# ARNSTEIN & LEHR LLP
ATTORNEYS AT LAW SINCE 1893

120 South Riverside Plaza · Suite 1200
Chicago, Illinois 60606
Phone 312.876.7100 · Fax 312.876.0288
www.arnstein.com

Robert A. McKenzie
312.876.6661
ramckenzie@arnstein.com

December 22, 2011

**VIA UPS NEXT DAY DELIVERY AND
EMAIL:** rtpilot@gmail.com
Mr. Rick Todd
58 Deborah Drive
Lemont, IL 60439

Re: **Chicagoland Aviation, LLC**
Our File No. 36832-0002

Dear Mr. Todd:

Please be advised that Arnstein & Lehr LLP represents Chicagoland Aviation, LLC (the "Company") as its attorneys. We are writing this letter to demand that you immediately cease and desist what we believe are improper, unlawful and illegal actions involving your employment with, and more specifically your departure from, the Company.

It was recently discovered that, despite the fact that you tendered to the Company your two-week notice of resignation on or about December 19th, you proceeded to come into the Company's premises the very next evening without authority or consent and engaged in conduct that has significantly damaged the Company. Not only did you take various pieces of equipment and property, you also disconnected many of the computers from their power source resulting in the failure of the Company's computer system to properly backup. Moreover, you also intentionally disrupted the phone system which resulted in the inability of many of the Company's customers to contact the Company for several hours on December 21st.

In light of the foregoing, we can only assume that you also improperly downloaded and/or extracted proprietary and confidential information of the Company on that evening as well. We are currently conducting a forensic audit of the computers and backup systems at the Company to ascertain whether any such conduct took place. Rest assured, if you did engage in such conduct, the Company will not hesitate to bring claims against you under both state and federal law.

It has also recently been revealed to us that you have been contacting current employees, as well as customers and aircraft owners, of the Company and falsely informing them that the Company will be no longer in business in January 2012. You

ARNSTEIN & LEHR LLP
Rick Todd
December 22, 2011
Page 2

have been directing these same individuals to terminate their affiliation, employment and/or relationship with the Company and engage with you. Such conduct, behavior and communications are simply unlawful and must cease immediately.

In order to potentially avoid the immediately filing of a lawsuit against you personally, please immediately do the following: (1) identify in writing exactly what articles/property you took from the Company, (2) identify in writing what you have in your possession related to the Company or its operations, and (3) identify what electronic or paper files, if any, you downloaded, accessed or took from the Company or its computer system since December 19th, (4) identify all customers, aircraft owners and students you have contacted about your departure from the Company, (5) cease and desist from making any use whatsoever of any confidential or proprietary information of the Company you may currently have in your possession, (6) cease and desist from informing anybody that the Company is going out of business, (7) return to the Company any property belonging to the Company, and (8) unconditionally confirm, in writing and under oath, that you have not used and will not use any of the confidential of proprietary information of the Company for any purpose whatsoever.

If you fail or refuse to comply fully with the terms of this letter by 4:00 p.m. on Friday, December 23, 2011, the Company intends to take all appropriate measures to protect its interests and prevent further injury from your improper acts, including but not limited to the filing of a lawsuit against you. Such lawsuit could include claims for the misappropriation of trade secrets, breach of fiduciary duty, tortuous interference with contract, conversion, defamation, libel, and violation of the Computer Fraud and Abuse Act, to name a few.

Finally, this letter serves to notify you that, despite the two-week notice that you tendered to the Company, your employment is terminated effective immediately. Therefore, in addition to the demands articulated above, you are instructed to immediately return any and all property of the Company, including, but not limited to any keys to its offices, no later than 4:00 pm on December 23, 2011.

We look forward to hearing from you and resolving this matter amicably.

Sincerely,

Robert A. McKenzie

Cc: Matt Zahora
E. Jason Tremblay

9911054.2