# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHICAGOLAND AVIATION, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 12 C 1139 |
| RICHARD R. TODD, CHICAGO ) | |
| PREMIER BOAT RENTAL AND ) | Judge Ronald A. Guzman |
| LEASING, LLC d/b/a CHICAGO ) | |
| PREMIER FLIGHT TRAINING, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Chicagoland Aviation, LLC filed suit against Richard Todd and Chicago Premier Boat Rental and Leasing d/b/a/ Chicago Premier Flight Training ("CPFT") after Todd resigned from Chicagoland Aviation and started CPFT. Plaintiff's complaint alleges, among others, claims under the Lanham Act, 15 U.S.C. § 1125(a), and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq*. ("IDTPA"), as well as common law claims for breach of a confidentiality agreement, service mark infringement and unfair competition, and breach of fiduciary duty.[1] After obtaining a temporary restraining order from this Court, Plaintiff filed a motion for preliminary injunction, which the Court referred to the magistrate judge.

---

[1] Although Plaintiff also alleges claims for tortious interference with business expectancy and tortious interference with contract, the Court does not address them as Plaintiff fails to include these as a basis for the issuance of a preliminary injunction. The Court further notes that while Plaintiff argues in its objections that Todd misappropriated trade secrets and confidential information, and appears to be contending that it has a likelihood of success on a claim under the Illinois Trade Secrets Act, the Complaint fails to include such a claim. Accordingly, the Court will not address any purported violation of the Illinois Trade Secrets Act as it has not been alleged. Instead, the Court addresses the misappropriation of purportedly confidential information only as it pertains to the alleged breach of fiduciary duty by Todd.

On June 8, 2012, the magistrate judge issued a Report and Recommendation ("R&R") recommending that Plaintiff's motion for a preliminary injunction be denied and the temporary restraining order be dissolved. Plaintiff timely filed objections to the R&R, which are currently before the Court. For the reasons set forth below, the Court adopts the R&R in full and denies Plaintiff's motion for a preliminary injunction.

**I.     Background**

Plaintiff operates a flight school that provides training to both novice and experienced pilots. (R&R, Dkt. # 105, at 1.) Plaintiff also runs a flying club for its customers, which provides discounts and other promotions to its member pilots. (*Id*. at 11.) Plaintiff has been in business for two years. (*Id.* at 2.) Matthew Zahora is the Plaintiff's president and manages all of its operations. (*Id.* at 1.) Defendant Richard Todd worked as a flight instructor, and then employee, for Plaintiff from May 2010 to approximately December 21, 2011. (*Id.* at 2.) After leaving Plaintiff's business, Todd began a rival business called CPFT. (*Id*. at 2.) Both Plaintiff and CPFT provide similar flight training services out of the same small airport. Todd did not sign a non-compete agreement with Plaintiff when he left. (*Id*.) Although Todd asked to sign a confidentiality agreement while employed by Plaintiff in order to gain access to client information, Plaintiff did not sign the agreement. (Pr. Inj. Hr'g Tr. 189:3-21.)

Soon after CPFT was established, Plaintiff filed the instant suit, which alleges that Todd breached his fiduciary duty by establishing his business while an employee of Plaintiff and by misappropriating confidential information. Additionally, Plaintiff claims that Todd's use of the name "Chicago Premier Flight Training" violates the Lanham Act and the IDTPA because it is similar to the Plaintiff's slogan "Chicago's Premier Flight Training Provider." According to Plaintiff, the similarity between the slogans has caused confusion among customers and hurt

2

Plaintiff's business. As noted above, Plaintiff filed timely objections to the magistrate judge's recommendation that the motion for preliminary injunction be denied. For the reasons stated below, the Court overrules the objections.

**II.     Discussion**

A district court reviews *de novo* any portion of a magistrate judge's report and recommendation to which written objections have been made. *See* Fed. R. Civ. P. 72(b). Plaintiff makes several objections to the R&R. First, Plaintiff asserts that it has a valid claim under the Lanham Act because the company's slogan is a protectable trademark and there was actual confusion. (Pl.'s Obj. R&R, Dkt. # 107, at 12.) Second, Plaintiff contends that Todd breached his fiduciary duty to Plaintiff by misappropriating confidential information and starting a competing business while still employed by Plaintiff. (*Id.* at 3-9.) Additionally, Plaintiff claims the magistrate judge incorrectly determined that it will not be irreparably harmed absent the injunction. (*Id.* at 7.) Finally, Plaintiff asserts that the magistrate judge should have determined the enforceability of the confidentiality agreement between Plaintiff and Todd. (*Id.* at 8.)

Generally, a party seeking a preliminary injunction must show: (1) some likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm to the plaintiff if the relief is not granted. *Promatek Indus., Ltd. v. Equitrac Corp.,* 300 F.3d 808, 811 (7th Cir. 2002). If the moving party is able to meet these three conditions, then the court must weigh the possibility of irreparable harm to the non-moving party if the injunction is issued, balancing this harm against the irreparable harm the moving party will suffer if the relief is denied. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). The Seventh Circuit has described this as a "sliding scale" analysis. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). The more likely Plaintiff is to succeed on the merits, the less the balance of harms needs to weigh

in its favor. *Id.* The Court should also consider the public interest in granting or denying the injunction. *Ty, Inc.,* 237 F.3d at 895.

    A.    <u>Likelihood of Success</u>

        1.  *Lanham Act*

Plaintiff claims that Todd's use of the name "Chicago Premier Flight Training" for his business violates its trademark "Chicago's Premier Flight Training Provider." For Plaintiff to state a claim under the Lanham Act, it must show that (1) its trademark is protected and (2) the relevant group of purchasers of the product or service in question is likely to confuse the alleged infringer's product or service with those of Plaintiff. *Forum Corp. of N. Am. v. Forum Ltd.*, 903 F. 2d 434, 439 (7th Cir. 1990).

The first issue before the Court is whether Plaintiff's slogan, "Chicago's Premier Flight Training Provider" is a protected trademark. The parties appear to agree that "Chicago's Premier Flight Training Provider" is a descriptive mark, which means "it does more than merely name a brand; it describes the product category to which the name belongs." *Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 483 (7th Cir. 2007). Generally, a descriptive mark cannot be protected unless the mark acquires secondary meaning, which happens when:

> the name . . . come[s] to be uniquely associated with the original seller, and . . . the term can be appropriated as a trademark because it has come to denote a single brand, not the entire product, so that its use by other sellers of the product would    confuse consumers about the source of what they were buying.

*Id.* Secondary meaning "can be established through direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market and proof of intentional copying." *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 393 (7th Cir. 1992).

Plaintiff states that it has continuously used the slogan since it began in 2010 and presented the testimony of one of its customers, Tom Chakos, who stated he had seen the phrase "Chicago's Premier Flight Training Provider" on Plaintiff's website and associated that slogan with Plaintiff. (Pr. Inj. Hr'g Tr. 150:6-151:25.) But Plaintiff points to no other evidence that its slogan has acquired secondary meaning. Use of a slogan on a website for, at the time of Todd's departure, approximately one year and the testimony of one customer that the slogan is used by Plaintiff is insufficient to establish secondary meaning. *Minemyer v. B-Roc Representatives*, *Inc.*, 678 F. Supp. 2d 691, 707-08 (N.D. Ill. 2009) (concluding that plaintiff failed to show secondary meaning when it "presented . . . no consumer evidence, no evidence of the duration or extent of his advertising, a sales brochures and an internet page that focus on his products' functional features, and one magazine advertisement that fails to specifically emphasize his 'mark.'"). *Cf. A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F. 2d 903, 907 (7th Cir. 1986) (finding secondary meaning for a descriptive term after product's name was the subject of nationwide media attention and exponentially increasing national demand). Indeed, as the magistrate judge noted, Todd used the terms "Chicago" and "Premier" in his company name "Chicago Premier Boat Rental and Leasing, LLC," which he started in 2009, prior to the founding of Plaintiff. (R&R, Dkt. # 105, at 6 n.22.) The Court concludes that Plaintiff has not established a likelihood of success with respect to secondary meaning.

Even assuming that Plaintiff had established secondary meaning, it has not demonstrated that there was confusion among customers due to the similarity of Plaintiff's slogan and CPFT's name. To determine whether or not there was confusion, the Court looks at seven factors described in *McGraw-Edison v. Walt Disney Prod.*, 787 F. 2d 1163, 1167-68 (7th Cir. 1986):

5

> (1) The degree of similarity between the marks in appearance and suggestion; (2) the similarity of the products for which the name is used; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the complainant's mark; (6) actual confusion; and (7) intent on the part of the alleged infringer to palm off his products as those of another.

In its objections, Plaintiff contends that there was actual confusion and intent on the part of CPFT and Todd to deceive customers into believing his business was actually that of Plaintiff. (Pl.'s Obj. R&R, Dkt. # 107, at 11,14.) However, Plaintiff once again provides insufficient evidence on these points. To demonstrate the defendants' intent to confuse, Plaintiff merely concludes, without evidentiary support, that because Todd adopted a similar name he *must* have wanted to draw upon the goodwill towards Plaintiff's business. (*Id.* at 11.) But this statement is pure conjecture and cannot support a finding of intent to confuse.

To prove actual confusion, Plaintiff relies on the testimony of the same customer, Tom Chakos, who said he saw the slogan "Chicago's Premier Flight Training Provider" on both Plaintiff's and CPFT's websites. (Pr. Inj. Hr'g Tr. 150:6-151:25.) However, Mr. Chakos acknowledged that he believed the CPFT's website was not Plaintiff's because he did not see the business name "Chicagoland Aviation" on CPFT's website. *Id.* Therefore, Plaintiff cannot establish a likelihood of confusion.

Plaintiff has not established a likelihood of success on the merits of its claim under the Lanham Act. This failure also dooms a likelihood of success on the IDTPA claim and the common law service mark infringement and unfair competition claims. *MJ & Partners Rest. Ltd. P'ship v. Zadikoff,* 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998) ("Plaintiffs do not dispute that Count II, based on the common law of unfair competition, and Count IV, based on . . . the Deceptive Trade Practices Act . . . must rise or fall based on the Lanham Act claim.").

2.     *Breach of Fiduciary Duty*

Generally, employees have a duty not to improperly compete with their employer, solicit the employer's customers, entice co-workers away from the employer, divert business opportunities, engage in self-dealing, and/or otherwise misappropriate the employer's property or funds. *Beltran v. Brentwood N. Healthcare Ctr., LLC*, 426 F. Supp. 2d 827, 831 (N.D. Ill. 2006). Plaintiff's only objection to the R&R on this issue is that "[t]he report incorrectly interposes a requirement of proof that defendant commenced his business while employed by plaintiff in place of standard indicia of breach of fiduciary duty." (Pl.'s Obj. R&R, Dkt. # 107, at 9.)  Plaintiff contends that Todd breached his fiduciary duty to Plaintiff by misappropriating confidential information and by establishing his rival business while employed by Plaintiff.

The Court agrees with the magistrate judge that the purported confidential information was either not confidential or not misappropriated. Plaintiff asserts that Todd took customer information, a customer list, Plaintiff's pricing structure and its marketing strategy. With respect to the pricing structure, Plaintiff points to testimony in which Todd describes a spreadsheet he created on the date he terminated his employment with Plaintiff. (Pr. Inj. Hr'g. Tr. 304-310; Pl.'s Ex. 33.) The spreadsheet appears to be a rough overview of the various revenues and costs associated with operating a flight school. When asked how he came up with the numbers on the spreadsheet page, Todd indicated that he either guessed or looked at websites on the internet to determine estimates. (*Id.*) This testimony, however, does not support a conclusion that Todd misappropriated Plaintiff's pricing structure. With respect to Plaintiff's marketing strategy, Plaintiff points to Todd's testimony in which he acknowledges that he received a copy of an e-mail sent by Matt Zahora, Plaintiff's owner, describing Plaintiff's sales strategy. (*Id.* 301, ll. 2-6.) But Plaintiff fails to point to testimony indicating that Todd misappropriated the strategy.

7

With respect to customer information, the magistrate judge found that with the exception of a list of twenty-five flying club members (R&R, Dkt. # 105, at 9-10), Plaintiff did not show that Todd had misappropriated any other customer information. As for the flying club member list, the club had public meetings, posted certain members' photos on Plaintiff's Facebook page, and its members would exchange contact information. (*Id*. at 11.) Thus, the flying club member list was not confidential. *Delta Med. Sys. v. Mid-Am. Med. Sys., Inc*., 772 N.E.2d 768, 781 (Ill. App. Ct. 2002) (holding that information in the public domain and which is easily duplicated is not a trade secret).

Regarding establishing a rival business, an employee may participate in the planning and outfitting of a rival business while still employed by a competitor without breaching his fiduciary duty. *Voss Eng'g, Inc. v. Voss Indus., Inc.,* 481 N.E.2d 63, 66 (Ill. App. Ct. 1985). *See also Riad v. 520 S. Mich. Ave. Assocs*., No. 97 C 2488, 2000 WL 680217, at *3 (N.D. Ill. May 22, 2000) (the preliminary stages doctrine "permits an employee to plan, form, and outfit a competing corporation while still working for the employer so long as he does not commence competition"). Only when the employee goes beyond preliminary planning activities and commences business as a rival while still employed does he breach his fiduciary duty to his employer. *Lawter Int'l, Inc. v. Carroll,* 451 N.E.2d 1338, 1349 (Ill. App. Ct. 1983).

Plaintiff contends that Todd solicited away two of Plaintiff's customers, and in support cites the testimony of Todd's co-worker, Timothy Lutgen, that Todd told him Plaintiff was having financial problems and that "he [Todd] was going to start a flight school with Mr. Jason Watts and Mr. Jerry [K]ulhanek regarding using their airplanes to start the flight school." (Pr. Inj. Hr'g. Tr. 242 ll. 17-23.) But this statement does not demonstrate that Todd had actually solicited away these two customers – only that Todd told Lutgen he was "going to" start a flight school using

their planes. Moreover, Watts testified that he was not a customer of Plaintiff and that he had ended his contractual relationship to lease his plane to Plaintiff on November 30, 2011 because he was unhappy with how Plaintiff was maintaining his aircraft. (R&R, Dkt. # 105, at 10; Contempt Hr'g. Tr., Dkt. # 111, at 96-97.) As for Kulhanek, he contacted Todd after he had ended his employment with Plaintiff, and Todd did not contact Kulhanek prior to Todd's departure. (Contempt Hr'g. Tr., Dkt. # 111, at 66.)

Plaintiff also states that "there can be no doubt" that Todd "induced one aircraft owner to terminate its marketing agreement with Plaintiff." (Pl.'s Obj. R&R, Dkt. # 107, at 9.) But the transcript citation provided by Plaintiff (Pr. Inj. Hr'g. Tr. 242:17-23) does not address this subject at all. In addition, Plaintiff asserts that Todd attempted to solicit away Brian Columbus, who apparently was one of Plaintiff's customers. (Pl.'s Ex. 46.) In a December 15, 2011 e-mail (*id.*), Todd tells Columbus that "[i]f you do end up getting a plane, it would be my honor to instruct you on the side." (*Id.*) However, in his testimony regarding this e-mail, Todd stated that Columbus "was extremely upset with the way that Chicagoland Aviation treated him, and left [Chicagoland Aviation], I believe, on that date, December 15th, [2011]." (Pr. Inj. Hr'g. Tr. 336.) So, Columbus was not a customer of Plaintiff at the time Todd made the solicitous comment. The Court finds that Plaintiff has not shown that Todd improperly solicited customers while he was an employee of Plaintiff's.

Plaintiff did elicit testimony that, while an employee of Plaintiff, Todd discussed the formation of his new business with Lutgen and indicated that a "spot [was] available for [him] on [Todd's] staff at the flight school." (Pr. Inj. Hr'g Tr. 244:14-19.) Moreover, Todd testified that he contacted the airport about starting another flight school, looked into insurance, and discussed leasing an airplane. (Pr. Inj. Hr'g Tr. 313:12-319:12.) However, there is no evidence that Todd

9

began actually competing with Plaintiff while still employed; thus, Plaintiff has not shown a likelihood of success on the merits with respect to this aspect of his breach of fiduciary duty claim. *See Cooper Linse Hallman Capital Mgmt., Inc. v. Hallman,* 856 N.E.2d 585, 592-93 (Ill. App. Ct. 2006) (finding no breach of fiduciary duty where two employees incorporated a competing business while still employed, typed new business plan on employer's computer, and did not inform employer of the plan to start a competing business).

3. *Breach of Confidentiality Agreement*

Plaintiff also contends that the magistrate judge erred when she failed to determine whether the confidentiality agreement signed by Todd, but not Matthew Zahora, Plaintiff's President, had been breached. The magistrate judge concluded that the question regarding the enforceability of the contract did not need to be resolved because the evidence at the hearing did not show that the information at issue was confidential or, if it was, that Todd misappropriated the information. (R&R, Dkt. # 105, at 14.) Moreover, the magistrate judge found that even if information had been misappropriated, Plaintiff's President, Zahora, admitted that the loss of customers to CPFT was quantifiable and therefore, no irreparable harm had been established. (Pr. Inj. Hr'g Tr. 131:2-20) (stating that it would be "no problem at all" for Mr. Zahora to quantify what lost customers earned for his business).)

Even assuming the contract was valid, no breach occurred. Todd asks the Court to conclude, with no citation to the record, that the contract "provided Todd with access to Confidential Information including trade secrets, customers, clients, and marketing[,] as discussed above." But this statement is directly contradicted by Zahora who testified that he did not give Todd any additional access to information based on the purported confidentiality agreement. (Pr. Inj. Hr'g. Tr. 88) ("[I] didn't grant Mr. Todd access to [the] computer program because I wasn't

10

in town. . . . and we just didn't have time to do the training. But to me it was nice to know that someone had signed a document saying: Hey, I'm on the team, and I'm not going to share this information.") Thus, according to Zahora's own admission, Plaintiff did not provide any information to Todd based on the confidentiality agreement. Moreover, as detailed above, the evidence established that the information at issue was either not confidential or not taken by Todd.

      B.      Irreparable Harm

Plaintiff can prove irreparable harm when it demonstrates that monetary damages cannot be calculated or that Plaintiff cannot be adequately compensated by an award of money damages. *Gateway E. Ry. Co. v. Terminal R.R. Ass'n*, 35 F. 3d 1134,1140 (7th Cir. 1994). The parties dispute whether Plaintiff has demonstrated irreparable harm. However, the Court need not address this issue given that Plaintiff has failed to show a likelihood of success on the merits.

## III.    Conclusion

For the reasons set forth above, the Court adopts the magistrate judge's R&R in its entirety and denies Plaintiff's motion for a preliminary injunction.

**Date**: November 27, 2012

                                        _____
                                        **United States District Judge**
                                        **Ronald A. Guzman**